UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| FRANK MARTIN, | ) | |
|       Petitioner, | ) | |
| | ) | No. 21 CV 50442 |
| v. | ) | Judge Iain D. Johnston |
| | ) | |
| BRITTANY GREENE, | ) | |
|       Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Frank Martin is serving a 40 year sentence following his 2015 conviction for sexually abusing his young daughter. Mr. Martin has petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons given below, the Court denies the petition for a writ of habeas corpus [1] and declines to issue a certificate of appealability.

## BACKGROUND

The Court presumes the correctness of the state court's factual findings, including the facts set forth in the state appellate court's opinion on Mr. Martin's direct appeal, in the absence of clear and convincing evidence to the contrary presented by Mr. Martin. *See* 28 U.S.C. § 2254(e)(1); *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020). The following are the facts as set forth in the state appellate court's opinion. *People of the State of Ill. v. Frank Martin*, 2017 IL App (2d) 150564-U (Ill. App. Ct. Sept. 28, 2017).

Mr. Martin was indicted on multiple counts of predatory criminal sexual assault and aggravated criminal sexual abuse based on conduct involving his daughter, AM. The evidence at trial established that Mr. Martin was a nudist. His then-wife testified that early in their marriage Mr. Martin was often nude, including around his children. As their first two children grew older his then-wife insisted he wear clothes around the children, but she would hear from the children that when she was not around he would go nude. Mr. Martin's daughter AM testified that from the age of five to about twelve Mr. Martin would take her on hikes while both were nude, though as she got older she would not take off her clothes. Also beginning at age five Mr. Martin would come to AM's room at bedtime naked to tuck her in, crawl into bed with her, kiss her, undress her, and touch her genitals. She testified that when she was eight or nine, Mr. Martin began performing oral sex on her, placing her hand on his penis, and penetrating her with his finger. The daughter testified this happened at least 50 times over the course of years. According to the daughter's testimony, her father also watched her shower, and stared at her friends making them uncomfortable. At the time AM never reported the conduct to her mother, and denied it once when her mother asked. Her mother testified that on one occasion AM reported that Mr. Martin had explained sex to her while both were naked, which is what led the mother to demand Mr. Martin move out of the house and divorce him. The daughter reported Mr. Martin to police only after her brother ZM contacted police to report his own allegations of sexual abuse.

At trial, ZM testified that between the ages of six and ten he and his father would watch television after the rest of the family went to bed, and that Mr. Martin would take off ZM's clothes and the two would lie together on the couch naked. ZM testified that when he was seven or eight, he and his father traveled to Indiana for the Brickyard 400 race, and that the night before in their hotel room, his father disrobed, took off ZM's shorts, touched ZM's penis, and made ZM touch Mr. Martin's penis. ZM testified that the next morning they wrestled in the hotel room, during which Mr. Martin pinned ZM on his stomach and placed his erect penis between ZM's buttocks. When ZM was 21, his fiancée complained that Mr. Martin had been looking down her shirt. ZM testified that his fiancée's report triggered his memories of being abused. It also caused him to be concerned that Mr. Martin may have been abusing his younger brother, TM, because he had overheard TM mention an instance when TM and Mr. Martin had hiked naked, and that Mr. Martin would not let TM get dressed when they returned home. ZM's concerns led him to report Mr. Martin to the police. Mr. Martin was not charged with abusing ZM. TM did not testify at trial.

The government played a video recording of police interviewing Mr. Martin just before arresting him, during which Mr. Martin admitted being a nudist and hiking nude, but denied that he did so with his daughter and denied touching either his daughter, AM, or his son, ZM, inappropriately. When Mr. Martin took the stand at trial, he denied touching his daughter's genitals, performing oral sex on her, or penetrating her. He explained that he was often away from home because his work was more than an hour from home, he put in 12-hour shifts six or seven nights a week, and as a result from gone from 4:30pm to 7:30am most days. A coworker with whom he carpooled testified and corroborated the time each day that they left for work and returned home.

Jurors found Mr. Martin guilty of four of the ten counts of predatory criminal sexual assault of a child on which he had been indicted, and two of the five counts of aggravated criminal sexual abuse. The trial court sentenced him to a total of 40 years' imprisonment. Mr. Martin filed both a direct appeal and a petition for relief from his conviction, but the trial court denied his petition, the Illinois appellate court affirmed both his conviction and the denial of his petition, and the Illinois Supreme Court denied his petition for leave to appeal. He also filed a post-conviction petition, but the trial court denied it, the appellate court affirmed the denial, and the Illinois Supreme Court denied his petition for leave to appeal.

Mr. Martin now seeks habeas relief under 28 U.S.C. § 2254. In his petition he alleges four grounds upon which he seeks relief:

I. the trial court erred by (a) admitting ZM's testimony as propensity evidence, and (b) giving jurors an instruction that (i) misstated the law on propensity evidence and (ii) placed undue emphasis on the evidence;

II. trial counsel was ineffective for failing to (a) impeach Sargent Dammon with false testimony he gave to grand jurors, and (b) move to dismiss the indictment based on prosecutorial misconduct when presenting false testimony to grand jurors;

III. trail counsel was ineffective for failing to call TM at trial to refute AM's testimony, and appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal; and

IV. the trial court erred by denying him access to grand jury transcripts and corresponding police reports.

## ANALYSIS

A federal district court may grant habeas relief to a state prisoner only if the state court's adjudication of the prisoner's claims either (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," *see* 28 U.S.C. § 2254(d)(1), or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. § 2254(d)(2).

To obtain habeas relief under 28 U.S.C. § 2254, a state inmate must first fully exhaust state court remedies. *See* 28 U.S.C. § 2254(b)(1)(A). The duty to exhaust includes the duty to provide a state court with a fair opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). Fair presentment also requires the petitioner to "assert his federal claim through one complete round of state court review, either on direct review or in post-conviction proceedings." *McGhee v. Watson*, 900 F.3d 849, 854 (7th Cir. 2018). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). Failure to first provide the state court the opportunity to correct any constitutional errors constitutes a procedural default. *Id.* at 1026. Claims are also considered procedurally defaulted—and, therefore, not cognizable on federal habeas review—when they are denied by a state court "based on an adequate and independent state procedural rule." *Crutchfield v. Dennison*, 910 F.3d 968, 973 (7th Cir. 2018).

A petitioner may not pursue a procedurally defaulted claim under 28 U.S.C. § 2254 unless he can establish cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that the court's failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008). Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999) (internal quotation marks and citation omitted). Prejudice exists where the petitioner shows that the violation of his federal rights "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Lewis*, 390 F.3d at 1026 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). The fundamental miscarriage of justice exception is "limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002). This requires new, reliable evidence of the petitioner's innocence in light of which "no juror, acting reasonably,

would have voted to find him guilty beyond a reasonable doubt." *Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

I.  **Propensity Evidence**

Mr. Martin contends that the state court erred by allowing his son ZM to testify that Mr. Martin had sexually abused him. Mr. Martin contends it was improper propensity evidence, and a faulty jury instruction about the use of propensity evidence drew even more attention to it. But challenges to state evidentiary rulings are not cognizable under 28 U.S.C. § 2254. *See Tyler v. Pfister*, No. 18 CV 1449, 2024 U.S. Dist. LEXIS 111038, at *21 (N.D. Ill. June 25, 2024) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Mr. Martin asserts generally that the use of propensity evidence violated not only Illinois law, but also his rights to due process under the U.S. Constitution. But whether the use of prior crimes as propensity evidence violates due process is an open question, and therefore Mr. Martin cannot show that the state court's ruling was contrary to or an unreasonable application of clearly established federal law from the Supreme Court. *See Tyler*, 2024 U.S. Dist. LEXIS 111038, at *21-22.

The government argues that this claim should be denied for the additional reason that Mr. Martin procedurally defaulted it by failing to raise it through one complete round of state court review. Mr. Martin responds that his procedural default should be excused because his counsel was ineffective for failing to raise it in state court. But because the claim is not cognizable regardless of whether it was defaulted, the Court need not address the government's alternative basis.

II.  **Officer Dammon's Grand Jury Testimony**

Mr. Martin contends that police officer David Dammon testified falsely to grand jurors "that the victim [AM] complained to The Petitioner's Wife That there was Sexual Abuse by The Petitioner as well as The Petitioner Being Nude around His Children and [AM]." Petition [1] at 3. He argues that his trial attorney was ineffective for (1) not moving to dismiss the indictment because prosecutors procured it with officer Dammon's false testimony, and (2) not impeaching officer Dammon at trial with the false testimony he gave to grand jurors. Mr. Martin raised this argument in his *pro se* post-conviction petition. Dkt. 21-18 at 350-51, 54-57. There, he argued that had trial counsel "read the discovery . . . she would have seen in the Grand Jury transcripts, the testimony given by Sgt. Dammon, creating the false impression that [AM] had complained to [Mr. Martin's ex-wife] about sexual abuse and not just nudity." *Id.* at 351.

The government argues that Mr. Martin procedurally defaulted these claims because, although he raised them in his post-conviction petition, he did not raise them in the appeal of the denial of his post-conviction petition, or in his petition for leave to appeal to the Illinois Supreme Court. Mr. Martin responds that his appellate counsel was ineffective for refusing to raise the issues on appeal, and therefore his procedural default should be excused.

On the issue of procedural default, the Court makes two observations. First, although he was represented by counsel for his post-conviction appeal, he filed his petition for leave to appeal to the Illinois Supreme Court *pro se*, and nowhere in that petition does he raise any

argument about officer Dammon's grand jury testimony (though the decision of the Appellate Court that he appealed never addressed the issue because counsel never raised it). Second, to rely on ineffectiveness of counsel to excuse procedural default, that ineffectiveness of counsel argument must have been raised through one complete round of state court review. *See Edwards v. Carpenter*, 529 U.S. 446, 449-50 (2000) ("'[A] claim of ineffective assistance,' we said, generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'") (quoting *Murray v. Carrier*, 477 U.S. 478, 489 (1986)). This Court's review of the record reveals that Mr. Martin first argued that his appellate counsel was ineffective for failing to repeat his arguments about officer Dammon's grand jury testimony not in state court, but rather in the reply brief filed in support of his § 2254 habeas petition, and only to argue that any procedural default should be excused.

Accordingly, this claim is procedurally defaulted. However, even if it was not, Mr. Martin could not prevail. To establish that his counsel was ineffective, he must show that (1) his appellate counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different. *Hinton v. Alabama*, 571 U.S. 263, 272 (2014) (applying the ineffective assistance of counsel analysis set out in *Strickland v. Washington*, 466 U.S. 668 (1984)). Mr. Martin cannot making those showings. First, there is no clearly established right to have an indictment dismissed "because of perjured grand jury testimony where the perjurious testimony is not repeated before the petit jury which convicts." *United States ex re. Changyaleket*, No. 07 CV 1694, 2008 U.S. Dist. LEXIS 99107, at *13 (N.D. Ill. Dec. 8, 2008) (internal quotation marks and citation omitted). In fact, there is no constitutional right to be indicted by a grand jury in state prosecutions. *See Ashburn v. Korte*, 761 F.3d 741, 758 (7th Cir. 2014). Counsel's refusal to argue otherwise is not unreasonable.

Second, the issue of what AM told her mother never came up during the direct examination of officer Dammon. Dkt. 21-17 at 37-56 (trial testimony of officer Dammon). Accordingly, his counsel had no basis for impeaching officer Dammon with whatever statements he made to grand jurors on that issue. To the extent Mr. Martin argues that his counsel should have used officer Dammon's grand jury testimony to portray him as a liar who cannot be believed, he has not established that officer Dammon's statements were false. Mr. Martin merely labels them false, without pointing to any evidence that officer Dammon, prosecutors, or his attorney knew them to be false, or that the Court or anyone else could conclude that they were false. In his *pro se* post-conviction petition, he asserted they were false because during "the Interrogation interview of the Petitioner . . . The Petitioner at No time agreed to [AM]'s accusations." Dkt. at 21-18 at 354. But that establishes only that Mr. Martin disagreed with officer Dammon's statement, not that officer Dammon's statement was false. In the end, Mr. Martin has not established that his appellate counsel fell below an objective standard of reasonableness by not raising these issues, or that using officer Dammon's grand jury testimony would have led to a different result given the testimony from Mr. Martin's victims about the nature of his conduct.

**III.    Failure to Call TM as a Trial Witness**

Next, Mr. Martin argues that his trial attorney was ineffective for failing to call his son TM as a trial witness, and counsel in his direct appeal was ineffective for failing to raise the issue on appeal. Mr. Martin's petition does not attach an affidavit or any other evidence of what testimony TM would have offered. Rather, Mr. Martin characterizes it as follows: "[TM]'s testimony would have refuted the False/Hearsay Testimony of [AM] That was evidence of Alleged other Crimes." Petition [1] at 3. In his reply brief he clarifies that his argument is not that he would have used TM's testimony "to refute the sexual abuse allegations" of AM because TM was born after that alleged abuse, but rather "to refute the character and propensity value of" ZM's testimony. Reply [26] at 9. Specifically Mr. Martin contends that TM's testimony would have refuted ZM's claim "that he heard T.M. talking with his father about hiking naked and that his father wouldn't let him get dressed." *Id.* at 10. Mr. Martin argues that TM's testimony would have been admissible under 725 ILCS 115/7-3(b), which permits evidence of not only certain of the defendant's other sex offenses, but also "evidence to rebut that proof or an inference from that proof."

Mr. Martin raised this claim in his state court post-conviction petition. Dkt. 21-18 at 335-59. The state trial court summarily dismissed the petition and Mr. Martin appealed. In its order denying his post-conviction appeal, the Illinois Appellate Court applied *Strickland* and concluded that Mr. Martin suffered no prejudice because TM's testimony would have been inadmissible under Illinois law for two reasons: (1) whether TM ever said that Mr. Martin took him hiking nude and refused to let him get dressed afterwards is irrelevant to whether Mr. Martin sexually abused AM; (2) evidence that Mr. Martin did not sexually abuse TM is character evidence that is inadmissible to show that Mr. Martin did not sexually abuse his other children; and (3) TM's testimony is inadmissible to impeach ZM's credibility because, even if TM denied saying that Mr. Martin took him nude hiking and would not let him get dressed, such testimony concerns a matter collateral to whether Mr. Martin abused ZM or AM. Dkt. 21-7 at 1-9.

When reviewing a petitioner's claims under § 2254, a federal court is limited to determining whether the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, or was based an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(2). In reaching that determination, a "federal court cannot disagree with a state court's resolution of an issue of state law." *Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016). And "[w]here the state court has ruled that trial counsel was not ineffective because a state law argument would have failed, that state law ruling is unassailable on habeas, even if it is couched as an ineffective assistance of counsel claim." *Rogers v. Wells*, 96 F.4th 1006, 1012 (7th Cir. 2024).

To begin, in his petition Mr. Martin makes representations about what TM's testimony would have been, but he has not supplied an affidavit from TM corroborating those representations. "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991). Neither side makes note of the lack of an affidavit. In his state court post-conviction petition Mr. Martin mentions that an "affidavit is not included for [TM], due to the fact that Petitioner is not allowed contact with him by his mother." Dkt. 21-

18 at 352. While that explains why Mr. Martin has no affidavit, it raises the question how he knows what TM's testimony would be.

But even accepting that TM would testify as Mr. Martin represents he would, Mr. Martin still cannot prevail on his ineffective assistance of counsel claim. The Illinois Appellate Court determined that Mr. Martin suffered no prejudice when his trial counsel did not call TM as a witness because under Illinois law the testimony would have been irrelevant or otherwise inadmissible. Mr. Martin takes issue with the appellate court's conclusion, arguing that under 725 ILCS 115/7-3(b), when the state admits evidence of his other sex offenses as propensity evidence, he is then entitled to rebut that evidence. In his motion for reconsideration to the Illinois Appellate Court, he supported that argument with a citation to *People v. Ward*, 952 N.E.2d 601 (Ill. 2011). In *Ward*, the trial court allowed evidence of the defendant's alleged sexual assault of another woman as propensity evidence under 725 ILCS 115/7-3(b), but did not allow evidence that the defendant had been acquitted of that assault. *See Ward*, 952 N.E.2d at 603-04. The Illinois Supreme Court concluded that the trial court had erred because 725 ILCS 5/115-3(b) allows not only propensity evidence but also "evidence to rebut that proof or an inference from that proof," and that the "acquittal evidence defendant sought to admit would have aided in rebutting the inference created by L.S.'s testimony that he had a propensity to commit sex offenses." *Ward*, 952 N.E.2d at 607.

*Ward* involved propensity evidence that the defendant had been involved in another sexual assault, and rebuttal evidence that he had not. In contrast, TM had no first-hand knowledge of whether Mr. Martin sexually abused ZM. Rather, as the Illinois Appellate Court addressed, TM's testimony would been offered in response to the propensity evidence only to raise questions about ZM's truthfulness. But because TM's testimony would have involved the collateral issue of what Mr. Martin did or did not do to TM rather than to ZM, it was inadmissible for impeachment purposes, relying on *People v. Abrams*, 260 Ill. App. 3d 566, 579 (1994). It also noted that Mr. Martin claimed only that TM would testify that Mr. Martin never took him hiking nude, not that he would deny ever saying that Mr. Martin took him hiking nude or that ZM was lying. The appellate court reasoned that TM's testimony would therefore be irrelevant to whether ZM was being truthful when he testified that his reason for finally alerting police to Mr. Martin's conduct included his concern about TM. These are all issues of state evidentiary law, and on habeas review federal courts do not disagree with a state court's resolution of its state law. *See Pierce v. Vanihel*, 93 F.4th 1036, 1046 (7th Cir. 2024) (state court rulings on admissibility of evidence, even if wrong, are not reviewable under § 2254). Given that TM's testimony would have been inadmissible under state law, Mr. Martin cannot establish that he was prejudiced by trial counsel's failure to offer the evidence, or appellate counsel's failure to raise the issue on direct appeal. *See Lopez v. Thurmer*, 594 F.3d 584, 587 ("[W]e will not fault counsel as ineffective for failing to advance a position under state law that the state appellate court said was meritless.") Because Mr. Martin's argument about *Strickland*'s prejudice prong fails, the Court need not address the other prong, whether counsel's performance was deficient. *Adeyanju v. Wiersma*, 12 F.4th 669, 675 (7th Cir. 2021).

IV.     **Grand Jury Transcripts and Corresponding Police Reports**

Finally, Mr. Martin contends that he was denied due process and equal protection of the law because the state criminal court denied his requests for grand jury transcripts and corresponding police reports. Mr. Martin cannot not prevail on this claim for two reasons. First, although he raised the issue of grand jury transcripts in a *pro se* motion to vacate the state trial court's denial of his post-conviction petition, Dkt. 21-2 at 36, which he appealed, Dkt. 21-2 at 44, he never raised the issue in his *pro se* petitions for leave to appeal to the Illinois Supreme Court, Dkt. 21-5 at 1-19; Dkt. 21-13 at 1-11. He never raised the issue of corresponding police reports at all. Accordingly, he procedurally defaulted these issues.

Second, even if he did not procedurally default the issue about grand jury transcripts, he admitted in his *pro se* post-conviction petition filed in state court that the grand jury transcripts were produced to his trial counsel during discovery. Dkt. 21-18 at 351 ("It was not even known to Petitioner if his attorney even took the time to read the discovery. Had she done such, then there is no doubt that she would have seen in the Grand Jury transcripts, the testimony given by Sgt. Dammon . . ."). And the state court confirmed that the grand jury transcripts had been produced to the defendant on July 16, 2013 as part of the government's answer to his motion for discovery. Dkt. 21-2 at 42. For the first time in his reply brief he suggests he was unable to obtain the grand jury transcripts for use in his post-conviction proceedings. But he does not establish that he was harmed given that even if the transcripts show that officer Dammon testified to grand jurors as Mr. Martin has represented, Mr. Martin still fails on the ineffective assistance of counsel claim he raised in his § 2254 petition.

**CONCLUSION**

For the reasons given, Mr. Martin's petition under 28 U.S.C. § 2254 [1] is denied. The clerk is directed to terminate this civil case.

Under Rule 11(a) of the Rules Governing § 2254 Cases, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing 28 U.S.C. § 2253(c)(2)). To make a substantial showing, the petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)); *see Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011).

The Court's denial of Mr. Martin's habeas petition relies on settled precedent, and its application of this precedent to the claims in his petition does not present difficult or close questions. Accordingly, the Court declines to issue a certificate of appealability.

Date: August 29, 2024        By:    _____
                                    Iain D. Johnston
                                    United States District Judge